**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NESPRESSO USA, INC., | |
| *Plaintiff and Counterclaim-Defendant*, | Case No. 19-cv-04223-LAP |
| v. | **JURY TRIAL DEMANDED** |
| WILLIAMS-SONOMA, INC., | |
| *Defendant and Counterclaim-Plaintiff.* | |

## JOINT FED. R. CIV. P. 26(F) CASE REPORT AND PROPOSED DISCOVERY PLAN

Pursuant to Rule 26(f) of the FEDERAL RULES OF CIVIL PROCEDURE ("FRCP"), Plaintiff/Counterclaim-Defendant Nespresso USA, Inc. ("Nespresso") and Defendant/Counterclaim-Plaintiff Williams Sonoma, Inc. ("Williams Sonoma"), by and through their undersigned counsel, submit the following Joint Case Report and Proposed Discovery Plan.

I.      **Statement of the Case**

      A.      **Nespresso's Statement**

            1.      **Nespresso's Amended Complaint**

                  a.      **Factual Background**

This case concerns Williams Sonoma's willful infringement and misappropriation of Plaintiff's famous NESPRESSO brand.

By way of background, over the past three decades, Nespresso has invested hundreds of millions of dollars in advertising, marketing, and promoting single-serve coffee products throughout the world under its famous NESPRESSO brand, including making significant investments in celebrity endorsements. Such NESPRESSO brand products include, for example, the famous Original NESPRESSO capsule, as well as the CITIZ espresso maker. During this time,

Nespresso has prominently and consistently promoted its capsule, packaging and machines in ways that feature their unique aesthetic designs.  In particular, Nespresso's iconic frustoconical capsule design and black rectangular sleeve packaging are prominently featured in nearly every aspect of Nespresso's promotional campaigns in the United States and worldwide, including, but not limited to, in Nespresso's boutique stores, on its website, and in Nespresso's online, television, and print advertisements.  Likewise, the unique aesthetic features of Nespresso's machines are prevalent throughout Nespresso's advertising. Because of Nespresso's substantial investment efforts, consumers throughout the world associate the famous Original NESPRESSO capsule and the CITIZ espresso maker uniquely with Nespresso. Nespresso's trademark rights in the NESPRESSO brand and trade dress rights in its iconic capsule design have also been recognized by this Court. In particular, in ruling on a motion for default judgment in *Nespresso USA, Inc. v. Africa America Coffee Trading Co. LLC D/B/A Libretto*, No. 15-cv-5553 (S.D.N.Y. June 2, 2016), Judge Swain took the time to issue a 15-page opinion, expressly recognizing Nespresso's trademark rights in the NESPRESSO name and trade dress rights in its distinctive capsule design, finding willful infringement of Nespresso's rights and issuing an injunction. *Id*. at 13-15.

Defendant Williams Sonoma is well aware of the widespread consumer recognition and commercial success of NESPRESSO brand products.  Indeed, for more than a decade, Williams Sonoma has been selling NESPRESSO brand products inside its stores in its catalogs, and on its website, including Nespresso's CITIZ espresso maker.

Recognizing that consumers are accustomed to encountering NESPRESSO brand products in Williams Sonoma's stores, Williams Sonoma began willfully trading off the fame and goodwill of the NESPRESSO brand to manufacture turnkey brand recognition for its new line of espresso products.  For example, in or about the spring of 2019, Williams Sonoma began marketing a frustoconical-shaped coffee capsule inside its retail stores – *side-by-side with genuine NESPRESSO*

2

*products*—that creates the same overall commercial impression as the iconic Original NESPRESSO coffee capsule—without a prominent and conspicuous non-affiliation disclaimer. Williams Sonoma's packaging for its coffee capsule also mimics Nespresso's packaging in that it consists of 10-capsule rectangular sleeve, with a predominantly black background and placement of color on both ends of the package that indicate the flavor of the espresso.

Williams Sonoma's willful conduct unsurprisingly caused (and continues to cause) actual consumer confusion about whether its infringing coffee capsule is licensed by, affiliated with, endorsed by, or sponsored by Nespresso. As enumerated in Nespresso's First Amended Complaint ("FAC"), consumers readily believe that Williams Sonoma's capsules are licensed by Nespresso. For example, one consumer stated on Facebook, "Love both of my Nespresso machines. Nice to see Williams Sonoma get the licensed recyclable capsule." Dkt. 22 at ¶ 110. Another consumer noted to Nespresso, "I like the collaboration you have with @williamssonoma for the Original Line capsules. Please oh please consider allowing Vertuo capsules as well." Dkt. 22 at ¶ 112. Additionally, a consumer inquired about Williams Sonoma's capsule, "Whats the difference from buying the capsules from Nespresso?" *Id*. at ¶ 111. Since Williams Sonoma launched its infringing capsules, instances of actual consumer confusion have been mounting, with consumers believing that Williams Sonoma's capsules are either licensed by Nespresso or originate from Nespresso, and evidence will show that consumer confusion is likely (and/or actually occurring) for both of these reasons.

Exacerbating the issues and cause for concern is that consumers were (and are) also complaining about the inferior quality of Williams Sonoma's infringing coffee capsules, stating that the coffee therein tastes sour and acidic and does not live up to the famous NESPRESSO brand's quality standards. Compounding Williams Sonoma's willful conduct were its false,

misleading, and disparaging claims about the recyclability of the Original NESPRESSO coffee capsule.

Accordingly, after first trying to resolve the matter amicably with Williams Sonoma, Nespresso commenced this lawsuit on May 9, 2019 to ameliorate the actual consumer confusion and damage to its famous NESPRESSO brand that Williams Sonoma was – and is – causing by selling coffee capsules that are confusingly similar, and inferior in quality, to the famous Original NESPRESSO capsule.  Instead of working to remediate the issues and damage to Nespresso that Williams Sonoma has caused and is causing, Williams Sonoma expanded its infringing conduct *after* Nespresso filed the original Complaint.  For example, Williams Sonoma recently began marketing and selling an espresso maker that creates the same overall commercial impression as Nespresso's well-known CITIZ espresso machine—even using the *identical* layout in its marketing materials as the layout used for the CITIZ espresso machine.  What is more, Williams Sonoma displayed its infringing espresso maker adjacent to Nespresso's famous Original NESPRESSO capsule *and* CITIZ espresso maker in Williams Sonoma's stores and catalog and on its website.  Accordingly, Nespresso filed its Amended Complaint on December 23, 2019 raising these additional issues.  *See* Dkt. No. 22.

Williams Sonoma could have chosen any of a number of alternative designs for its capsules and machine, but, instead, it chose to copy Nespresso's iconic trade dress to piggyback off of the immense goodwill and consumer recognition that Nespresso has established through years of promotion and investment. Notably, there are a number of third parties in the marketplace selling competing capsules that are sufficiently different in design from Nespresso's capsules and are non-infringing, evidencing that Nespresso's frustoconical capsule trade dress is neither functional nor required for competing capsules to work with Nespresso machines.

**b.     Legal Issues**

Williams Sonoma's unlawful conduct, and Nespresso's claims in the Amended Complaint, present the following legal issues for this Court to resolve:

i.      Whether the product design trade dress that Williams Sonoma uses for its espresso capsules creates a likelihood of confusion with Nespresso's ORIGINAL Capsule Trade Dress; dilutes Nespresso's ORIGINAL Capsule Trade Dress; and/or constitutes unfair competition under federal law, New York common law, and/or New York statutory law.

ii.     Whether the product packaging trade dress that Williams Sonoma uses for its espresso capsules creates a likelihood of confusion with Nespresso's ORIGINAL Capsule Packaging Trade Dress; dilutes Nespresso's ORIGINAL Capsule Packaging Trade Dress; and/or constitutes unfair competition under federal law, New York common law, and/or New York statutory law.

iii.    Whether the product design trade dress that Williams Sonoma uses for its espresso machine creates a likelihood of confusion with Nespresso's CITIZ Espresso Machine Trade Dress; dilutes Nespresso's CITIZ Espresso Machine Trade Dress; and/or constitutes unfair competition under federal law, New York common law, and/or New York statutory law.

iv.     Whether Williams Sonoma's use of the NESPRESSO word marks creates a likelihood of confusion about the source or quality of its products (and/or Nepresso's products); constitutes trademark dilution; and/or constitutes unfair competition under federal law, New York common law, and/or New York statutory law.

v.      Whether Williams Sonoma's infringement of Nespresso's intellectual property was willful and/or exceptional.

### 2.      Williams Sonoma's Counterclaims

On November 4, 2019, Williams Sonoma asserted counterclaims against Nespresso.  *See* Dkt. No. 17 (as reasserted in Dkt. No. 32, the "Counterclaims").  The premise of Williams Sonoma's Counterclaims is that it allegedly earned promotional support for selling NESPRESSO Original Line machines during Nespresso promotional events (*e.g.*, Father's Day 2019).  However, according to Williams Sonoma, Nespresso allegedly instructed third-party vendors to withhold this promotional support from Williams Sonoma in retaliation for its infringing conduct.

Williams Sonoma does not assert Counterclaims under federal anti-trust law based on Nespresso's complained-of conduct; instead, Williams Sonoma asserts Counterclaims under New York common law for alleged (i) tortious interference with business relations, (ii) tortious interference with contracts, (iii) unfair competition, and (iv) unjust enrichment.  *See* Dkt. Nos. 17, 32.

On December 23, 2019, Nespresso moved to dismiss the Counterclaims in their entirety pursuant to FRCP 12(b)(6) (the "Motion to Dismiss").  *See* Dkt. Nos. 24-5. Williams Sonoma filed its Opposition on January 20, 2020.  *See* Dkt. No. 33.  Nespresso's Reply is due on February 3, 2020.  *See* Dkt. No. 29.

As explained in further detail in Nespresso's Motion to Dismiss (and pending Reply), William Sonoma's theories of liability and damages in its Counterclaims are implausible.  For example, promotional support was contingent on Williams Sonoma's compliance with the promotion's Terms and Conditions, including a brand integrity clause that required Williams Sonoma to place its infringing espresso capsules a certain distance away from Original NESPRESSO capsules inside of it stores.  Yet, by its own admission, Williams Sonoma did not comply with this requirement.  Instead, Williams Sonoma marketed its infringing espresso capsules side-by-side with Original NESPRESSO capsules, thereby violating the brand integrity clause and

rendering itself ineligible for promotional support.  Accordingly, it is implausible that Nespresso "interfered" with Williams Sonoma's alleged "right" to receive promotional support when Williams Sonoma was ineligible to receive promotional support to begin with.

Likewise, it is implausible that Williams Sonoma suffered any damages by not receiving promotional support that it had no right to receive to begin with.  Indeed, Williams Sonoma does not allege that it lost a single sale as a result of Nespresso's alleged conduct.

### B.    Williams Sonoma's Statement of the Case

#### 1.    Nespresso's Claims Against Williams Sonoma

##### a.    Background

Williams Sonoma is a leading specialty retailer of high-quality kitchenware, cookware, cook's tools, electrics, dinnerware, and tabletop accessories, as well as cookbooks, foods, and food-related content.  It sells a wide range of premium coffee and espresso machines and related accessories, as well as coffee and espresso beans, ground coffee, and coffee capsules—both under its own WILLIAMS SONOMA brand and many third-party brands, including NESPRESSO.  For over a decade, Williams Sonoma and Nespresso maintained a successful business relationship where Williams Sonoma sold NESPRESSO-branded coffee machines, espresso machines, and related accessories (but not the capsules for the machines).

In 2019, joining many other companies already selling capsules compatible with NESPRESSO-branded machines, Williams Sonoma launched a line of coffee capsules under the WILLIAMS SONOMA brand that are compatible with the NESPRESSO-branded "Original Line" machines.  Upset that Williams Sonoma introduced a line of capsules competitive with its own capsules, Nespresso filed an 18-Count Complaint in the instant action, alleging claims including trade dress infringement and dilution of its alleged trade dress rights in its capsules and in the packaging for its capsules.  Further upset that Williams Sonoma then later joined the many other

companies selling single-serve capsule coffee makers (to sell its own WILLIAMS SONOMA-branded capsule coffee maker), Nespresso amended its Complaint to add claims for trade dress infringement and dilution of one of its single-serve machines.

All of Nespresso's claims against Williams Sonoma are meritless and are a clear attempt to further Nespresso's apparent goal of restricting the market for coffee capsules compatible with Nespresso machines.

At a threshold level, the legal bar for establishing protectable trade dress rights in product and packaging designs is extremely high, and Nespresso will not be able to meet it.  Indeed, Nespresso's alleged capsules, packaging, and machine consist of functional designs that are commonplace in the industry and are required in order to work in the machines, and consumers do not associate them with a single source (*i.e.*, there is no "secondary meaning").  In fact, the United States Patent and Trademark Office rejected Nespresso's application to register the capsule design, on the grounds that it is "functional, and thus unregistrable." *See* U.S. App. Ser. No. 88/215,860. (Not surprisingly, Williams Sonoma has not even attempted to register the alleged packaging or machine designs.) The lack of secondary meaning is further exemplified by facts including that: Nespresso itself does not appear to have a clear understanding of its own alleged rights, as it has changed the definition of its alleged trade dress in its capsules between its original and amended complaints; there does not appear to be any unsolicited media coverage about the alleged "trade dress" (apart from the products as a whole); and Nespresso does not appear to advertise the elements of its trade dress (apart from the products as a whole).

In any event, even if Nespresso were somehow able to clear the high hurdle of establishing protectable rights in its alleged designs, it will not be able to show that Williams Sonoma infringes or dilutes those rights.  Among other reasons, Williams Sonoma is not aware of any instances of actual confusion in the marketplace (*i.e.*, where a customer purchased NESPRESSO-branded

capsules thinking that they were from Williams Sonoma, or vice versa), even though the parties' products have both coexisted in the marketplace for nearly one year; Williams Sonoma's product packaging prominently features its WILLIAMS SONOMA brand name, completely eliminating even any potential for confusion; and Nespresso's asserted designs are so weak that even if they *were* entitled to any protection, the scope of that protection would be extremely narrow and the significant differences in Williams Sonoma's designs are more than sufficient to dispel any potential for confusion.  Finally, dilution claims are reserved for "famous" trademarks or trade dress that rise to the level of "household names" (*e.g.*, Coca-Cola or McDonalds), and none of Nespresso's alleged trade dress comes anywhere close to this level. Moreover, none of Williams Sonoma's actions have been "willful," for at least the reason that Nespresso does not own any trade dress rights whatsoever in any of the products asserted in its Complaint.

### b.    Legal Issues

Nespresso's claims in the Amended Complaint present the following primary legal issues for this Court to resolve:

i.    Whether Nespresso owns protectable trade dress rights in the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress."

ii.    If Nespresso does establish such protectable rights, whether Williams Sonoma's sale of its coffee capsules, packaging, and single-serve coffee capsule makers creates a likelihood of confusion and/or dilution and/or constitutes unfair competition.

### 2.    Williams Sonoma's Counterclaims

### a.    Background

Until Williams Sonoma launched its single-serve coffee capsules, Nespresso and Williams Sonoma had maintained a thriving business relationship dating back over ten years, through which

Williams Sonoma had sold NESPRESSO-branded machines in its WILLIAMS SONOMA-branded stores, catalogs, and website.  Nespresso had always supported the marketing and promotion of its NESPRESSO-branded machines by, among other things, allowing Williams Sonoma (along with other retailer partners) to offer NESPRESSO-branded machines at discounts at certain times of the year.  As part of these promotions, Nespresso provided promotional support to the retail partners for these discounted sales.  Specifically, after a Nespresso-dictated promotional period ended, Williams Sonoma would provide a report to Nespresso including the number of qualifying machines sold during that period and issue a "debit memo" to Nespresso so that Williams Sonoma could recoup certain amounts lost on margins for the discounted sales during the promotional period. This "debit memo" process is commonplace between retailers and their third-party vendors and ran smoothly between Nespresso and Williams Sonoma for over a decade.

In 2016, Nespresso announced that certain NESPRESSO-branded machines would no longer be supplied directly from Nespresso but would be distributed through certain third-party "machine partners," including existing suppliers HWI Breville USA and DeLonghi America, Inc. ("WS Vendors"). Accordingly, in 2017, these "partner machines" began to be supplied through longstanding contracts already in place between Williams Sonoma and the WS Vendors, instead of through Nespresso directly.  Thereafter, Nespresso also redirected promotional support—including debit memos—through these WS Vendors.  Williams Sonoma began debiting the WS Vendors for promotional sales of NESPRESSO-branded machines in 2017, and the WS Vendors provided reimbursement for promotional sales to Williams Sonoma through the previously-established "debit memo" process without issue for over two years.

But after Williams Sonoma launched its WILLIAMS SONOMA-branded premium coffee capsules for use in Nespresso OL Machines, Nespresso became upset that Williams Sonoma had entered the coffee capsule market, and it launched a series of retaliatory actions.  Specifically, just

days before Nespresso filed its Complaint and the start of its already-announced Mother's Day Promotion, Nespresso sent Williams Sonoma a set of Terms and Conditions that included a never-before-seen "Brand Integrity Clause" that stated in part, "no other coffee capsule, regardless of manufacturer, may be positioned on or in the immediate vicinity of a display of a Qualifying Machine." Williams Sonoma was surprised to see the clause because Nespresso had never included such a clause in the past decade prior to Williams Sonoma's launch of its capsules.

Since then, Nespresso has revised the Brand Integrity Clause, and has also unilaterally determined multiple times that that due to the placement of certain products at certain Williams Sonoma retail locations and in its catalog, Williams Sonoma would not be eligible to receive promotional support for any sales of the Nespresso OL Machines that Williams Sonoma had already made during promotional periods—even though Williams Sonoma had already earned the support by selling Nespresso's machines at a discount and later issuing the debit memos, according to the practice it had in place for years with the WS Vendors.

Accordingly, Nespresso instructed the WS Vendors to withhold the promotional support to Williams Sonoma. The WS Vendors followed Nespresso's instruction. As a result of Nespresso's unilateral determination (and the WS Vendors' execution of that determination), Williams Sonoma lost significant sums of money in promotional support and its relationship with the WS Vendors became strained and was harmed.

The foundation for Williams Sonoma's Counterclaims is that Williams Sonoma and Nespresso—and then Williams Sonoma and the WS Vendors—had been operating under a course of dealing for over a decade whereby Williams Sonoma would: (i) receive Terms and Conditions regarding the dates of the promotion, products subject to the promotion, and the amount of the discount (which never included a "Brand Integrity Clause" prior to 2019); (ii) sell the products at the discounted rate set by Nespresso; and (iii) receive promotional support payments from

Nespresso or the WS Vendors to recoup lost margins for such discounted sales. It was only after Williams Sonoma introduced competing products that Nespresso abruptly instituted a new "Brand Integrity Clause" and interfered with Williams Sonoma's relationships with the WS Vendors to prevent Williams Sonoma from receiving payment.

**b.**      **Legal Issues**

Williams Sonoma's Counterclaims present the following legal issues for this Court to resolve:

      i.     Whether Nespresso tortiously interfered with Williams Sonoma's business relations with the WS Vendors under New York common law.

      ii.     Whether Nespresso tortiously interfered with Williams Sonoma's contracts under New York common law.

      iii.     Whether Nespresso engaged in unfair competition under New York common law.

      iv.     Whether Nespresso was unjustly enriched at Williams Sonoma's expense under New York common law.

**II.**      **Settlement History**

The parties have discussed the potential for settlement but have been unable to come to a resolution.  The parties believe that the aid of a Magistrate Judge would assist the parties in reaching a mutually agreeable resolution of this dispute.  Accordingly, the parties respectfully request that this Court refer them to a Magistrate Judge for an early settlement conference.

**III.      FRCP 26(f)(3) Joint Discovery Plan**

      **A.      FRCP 26(f)(3)(A): Timing of FRCP 26(a)(1) Disclosures:** February 10, 2020.

      **B.      FRCP 26(f)(3)(B): Discovery Subjects, Schedule, and Phases**

            **1.      Discovery Subjects**

                  **a.      Nespresso's Statement**

At this time, Nespresso anticipates needing discovery on the following subjects:

      i.   Williams Sonoma's adoption, use, advertising, marketing, and sales of its espresso capsules and related packaging and the financial metrics related thereto;

      ii.   Williams Sonoma's adoption, use, advertising, marketing, and sales of its espresso maker and related packaging and the financial metrics related thereto;

      iii.  Williams Sonoma's acquisition and sales of NESPRESSO-brand products and the financial metrics related thereto;

      iv.  Williams Sonoma's advertising, marketing, and promotional efforts related to and concerning NESPRESSO-brand products and the financial metrics related thereto;

      v.   Williams Sonoma's knowledge of Nespresso's intellectual-property rights;

      vi.  Williams Sonoma's corporate history and structure;

      vii. Williams Sonoma's intellectual property practices, procedures, and/or guidelines;

      viii. The target market for Williams Sonoma's products;

      ix. Consumer inquiries pertaining to affiliation, sponsorship and/or endorsement of or licenses by Nespresso pertaining to Williams Sonoma's espresso capsules and espresso machine and any instances of actual consumer confusion related to the same;

      x.   Williams Sonoma's participation in Nespresso's "partner machine" program;

xi. Williams Sonoma's adherence or lack of adherence to Nespresso's Terms and Conditions during Nespresso's promotional sales periods; and

xii. Williams Sonoma's business relationship with Nespresso.

Nespresso reserves the right to seek discovery on additional subjects as this lawsuit proceeds.

**b.      Williams Sonoma's Statement**

At this time, Williams Sonoma anticipates needing discovery on at least the following subjects:

i.   Nespresso's corporate history and structure.

ii.   Nespresso's intellectual property practices, procedures, and/or guidelines.

iii.   Nespresso's selection, design, development, adoption, and use of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

iv.   The products that Nespresso markets and sells in connection with the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

v.   Nespresso's sales and distribution of products bearing the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

vi.   Information relevant to any trademark applications that Nespresso has contemplated filing (or has actually filed), and any resulting registrations, with respect to the alleged

"Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

vii.   Information relevant to the analysis of whether Nespresso has developed secondary meaning and/or fame in the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

viii.   Information relevant to the analysis of whether the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress" are generic.

ix.   Information relevant to the analysis of whether the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress" are functional.

x.   Nespresso's marketing and advertising of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress."

xi.   Unsolicited media coverage of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress."

xii.   The manner in which Nespresso describes the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress."

xiii.   Information relevant to any intentional copying of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade

Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

xiv.   Information relevant to any association of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks" with a particular source by actual purchasers.

xv.   The length, degree, exclusivity, and consistency of Nespresso's use of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

xvi.   Information relevant to the analysis of whether there is a likelihood of confusion or dilution between the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress" and Williams Sonoma's capsule, packaging, and machine products that Nespresso accuses of infringing.

xvii.   Channels of trade and target consumers for Nespresso's products.

xviii.   Nespresso's knowledge of third-party products in the market using some or all of the elements of the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," and the alleged "Nespresso Citiz Espresso Maker Trade Dress."

xix.   Any alleged instances of "actual confusion."

xx.   Nespresso's allegations of monetary and non-monetary harm.

xxi.   Nespresso's enforcement efforts relevant to the alleged "Original Nespresso Capsule Trade Dress," the alleged "Original Nespresso Capsule Packaging Trade Dress," the alleged "Nespresso Citiz Espresso Maker Trade Dress," and the alleged "Nespresso Marks."

xxii.   Nespresso's internal and external (i.e., with third parties) communications concerning Williams Sonoma.

xxiii.   Nespresso's business relationship with Williams Sonoma.

xxiv.   Nespresso's "partner machine" program, first announced in 2016.

xxv.   Nespresso's Terms and Conditions that govern Nespresso's promotional sales periods with its retail partners, including the implementation of its "Brand Integrity Clause."

xxvi.   Actions taken by Nespresso to determine its retail partners' alleged compliance with Nespresso's Terms and Conditions for promotional sales periods.

xxvii.   Promotional support reimbursement for Nespresso's retail partners.

xxviii.   Nespresso's decision to withhold promotional support dollars from Williams Sonoma.

Williams Sonoma reserves the right to seek discovery on additional subjects as this lawsuit proceeds.

**2.    Discovery Schedule**

    **a.    The Parties' Jointly-Submitted Proposed Schedule**

**i.    Service of FRCP 26(a)(1) Initial Disclosures:** February 10, 2020

**ii.    Amendment of Pleadings:** Either party may seek leave to file an amended pleading at any time in the manner provided in FRCP 15

### iii.    Fact Discovery

- Service of initial written discovery requests (other than contention interrogatories): March 26, 2020

- Substantial completion of document productions: August 13, 2020

- Service of final written discovery requests (including contention interrogatories): September 17, 2020

- Completion of fact witness depositions: November 19, 2020

- Fact discovery closes: November 19, 2020

### iv.    Expert Discovery

- Service of expert reports on issues on which each party bears the burden of proof (Fed. R. Civ. P. 26(a)(2)(B)): January 21, 2021

- Service of expert reports on any issues that are responsive to the burden of proof expert reports (Fed. R. Civ. P. 26(a)(2)(B)): March 15, 2021

- Completion of expert witness depositions: April 29, 2021

- Expert discovery closes: April 29, 2021

- Motions objecting to the reliability of an expert's proposed testimony under Rule 702 of the Federal Rules of Evidence shall be filed and served by May 13, 2021. Oppositions to motions objecting to the reliability of such experts' proposed testimony under Rule 702 of the Federal Rules of Evidence shall be filed and served by May 27, 2021. Replies in support of motions objecting to the reliability of such experts' proposed testimony under Rule 702 of the Federal Rules of Evidence shall be filed and served by June 3, 2021.

> **v.      Deadline To Request Pre-Motion Conference for Dispositive Motions:**
Unless the Court Orders otherwise, 21 days after the close of any briefing filed under Rule 702 of
the Federal Rules of Evidence.

> **vi.      Joint Pretrial Order:** Pursuant to Rule 3.A of the Court's Individual Rules
of Practice, 30 days after the close of any briefing filed under Rule 702 of the Federal Rules of
Evidence.

> **vii.      Pre-Trial Filings:** Pursuant to Rule 3.B of the Court's Individual Rules of
Practice, 15 days before the date of commencement of trial, if such a date has been fixed, or 30
days after the filing of the final pretrial order, if no trial date has been fixed.

> **viii.      Trial:** Unless the Court Orders otherwise, 60 days after the parties finish
briefing all pre-trial filings.

> **3.      Discovery Phases**

The parties believe that it would be most efficient to bifurcate fact and expert discovery.
The parties also believe that discovery on liability and damages can proceed concurrently.

> **C.      FRCP 26(f)(3)(C): Preservation, Discovery, and Disclosure of ESI**

The parties are aware of their obligations to preserve relevant and discoverable
electronically stored information ("ESI") within their possession, custody, and control.  Each party
has instituted appropriate measures to preserve relevant and discoverable ESI.  The parties have
agreed to work together in good faith on a protocol that will govern the discovery and disclosure of
ESI in this lawsuit (the "ESI Protocol").  Unless the Court Orders otherwise, the parties reasonably
anticipate submitting a proposed ESI Protocol to the Court for its review and approval within 45-
60 days of the February 3, 2020 Initial Pretrial Conference.

**D.      FRCP 26(f)(3)(D): Claims of Privilege and/or Protection**

The parties have agreed to work together in good faith on a protocol that will govern any inadvertent waiver of any privilege in this lawsuit.  Unless the Court Orders otherwise, the parties reasonably anticipate submitting a proposed FED. R. EVID. 502(d) Order to the Court for its review and approval within 45-60 days of the February 3, 2020 Initial Pretrial Conference.

**E.      FRCP 26(f)(3)(E): Limitations on Discovery**

At this time, the only limitation on discovery that the parties believe is necessary is Local Civil Rule 33.3(a)'s limitation on contention interrogatories at the commencement of discovery. The parties also agree to disclose the names of their respective 30(b)(6) witnesses and their designated topics at least seven business days before the date of the deposition.

The parties agree to work together in good faith if a need arises for either party to modify the FRCP's limitations on written discovery and/or depositions.  If the parties are unable to reach an agreement on this issue, then they respectfully reserve the right to seek a modification(s) on discovery limitations in the manner provided under FRCP 16(b)(4).

**F.      FRCP 26(f)(3)(F): Additional Orders Under FRCP 26(c), 16(b), and 16(c)**

The parties agree that this lawsuit will include the disclosure and use of attorneys'-eyes-only, highly confidential, and confidential documents and things.  The parties have agreed to work together in good faith on a Protective Order that will govern the disclosure and use of such documents during and after this lawsuit.  Unless the Court Orders otherwise, the parties reasonably anticipate submitting a proposed FRCP 26(c) Protective Order to the Court for its review and approval within 45-60 days of the February 3, 2020 Initial Pretrial Conference.

At this time, the parties do not see a need for the Court to issue any Orders under FRCP 16(b) or (c). The parties respectfully reserve the right to seek a modification of any aspect of this FRCP 26(f) Discovery Plan in the manner provided under FRCP 16(b)(4).

Respectfully submitted,

MAYER BROWN LLP

*s/A. John P. Mancini/*
A. John P. Mancini
Jonathan W. Thomas
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506-2500
Email: JMancini@mayerbrown.com
Email: JWThomas@mayerbrown.com

Adam L. Hudes (*pro hac vice* forthcoming)
1999 K Street, NW
Washington, D.C. 20006
Tel.: (202) 263-3298
Email: AHudes@mayerbrown.com

Kristine M. Young (*pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 782-0600
Email: KYoung@mayerbrown.com

Dated: January 27, 2020

*Attorneys for Plaintiff/*
*Counterclaim-Defendant Nespresso USA, Inc.*

ORRICK, HERRINGTON & SUTCLIFFE LLP

*s/Elizabeth E. Brenckman/*
Elizabeth E. Brenckman
51 West 52nd Street
New York, New York 10019-6142
Tel.: (212) 506-3535
Email: ebrenckman@orrick.com

Sheryl Koval Garko (*pro hac vice*)
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Tel.: (617) 880-1919
Email: sgarko@orrick.com

Dated: January 27, 2020

*Attorneys for Defendant/*
*Counterclaim-Plaintiff Williams-Sonoma, Inc.*

**IT IS SO ORDERED**

this _____ day of _____, 2020.

_____
The Honorable Loretta A. Preska
United Stated District Judge