USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/12/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NESPRESSO USA, INC.,

                            Plaintiff,

       -against-

WILLIAMS-SONOMA, INC.,

                            Defendant.

-----------------------------------------------------------------X

**OPINION AND ORDER ON ISSUANCE OF LETTERS OF REQUEST TO SWITZERLAND**

1:19-cv-4223 (LAP) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Defendant Williams-Sonoma, Inc. ("Defendant" or "Williams-Sonoma") moves for the issuance of letters of request, also known as letters rogatory,[1] to Switzerland pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), 23 U.S.T. 2555 and 28 U.S.C. § 1781.  (ECF No. 127.)  Defendant seeks the assistance of the Swiss Central Authorities in obtaining documents from four of Nespresso USA, Inc.'s ("Plaintiff" or "Nespresso") affiliates: (1) Société de Produits Nestlé S.A. ("SPN"); (2) Nestlé Nespresso S.A. ("NNSA"); (3) Nestlé S.A.; and (4) Nestec S.A. (collectively, the "Nestle Entities"). Plaintiff objects to the proposed requests because it views them as overbroad, repetitive, untimely, irrelevant, and disproportional to the needs of the case.  For the reasons set forth below, Defendant's request is GRANTED in part, subject to the modifications and guidance outlined below.

---

[1] "Letters of request" are synonymous with "letters rogatory." *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2018 WL 2958361, at *2 n.1 (S.D.N.Y. June 13, 2018) (citing *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 n.5 (S.D.N.Y. 2012)); Fed. R. Civ. P. 28 advisory committee's notes to 1993 amendment.  Accordingly, the Court uses the two expressions interchangeably.

**BACKGROUND**

This is a trademark and trade dress infringement case stemming from the parties' respective production and sale of coffee capsules. Nespresso alleges that it has the exclusive right to use the Original NESPRESSO Capsule Trade Dress (the "Original Line capsules") in the United States and that Williams-Sonoma's coffee capsules infringe on that right. Williams-Sonoma asserts a wide variety of defenses, including non-infringement and that Nespresso's asserted trade dress is functional and, therefore, not entitled to protection under the Lanham Act, 15 U.S.C. § 1125(a).

In prior case management conferences Nespresso represented to this Court that it is unable to obtain discovery from its foreign affiliates (i.e., the Nestle Entities). Accordingly, this Court surmised that the Hague process might be the most efficient means for Williams-Sonoma to obtain the allegedly vital documents that it seeks. Indeed, Nespresso agreed with the Court that Williams-Sonoma should go through the Hague process in order to obtain this discovery. However, before the instant motion was filed, the parties exchanged certain documents to clarify the scope of the Hague request that would be required. In particular, the Court ordered Nespresso to produce certain agreements between it and its affiliates so that Williams-Sonoma could better understand the nature of Nespresso's relationship with the Nestle Entities.

After reviewing these agreements and other documents produced by Nespresso in discovery, Williams-Sonoma submitted the instant motion to the Court seeking various categories of documents from the Nestle Entities. Williams-Sonoma argues that these documents are material to the key issues involved in this case. The categories of documents

2

sought include, but are not limited to: (1) agreements concerning the sale, distribution, or trade dress of the Original Line capsules in the United States; (2) research and development documents pertaining to the functionality of the Original Line capsule design; (3) research and development documents and customer communications from the United States concerning the use of third-party capsules in Original Line machines; and (4) non-privileged documents related to the United States trade dress registration application and two United States utility patents that cover the design of the Original Line capsule.  Nespresso correctly points out that there were initially 15 requests in total and that six of those 15 requests are intended for all four of the Nestle Entities.  Another six of the requests are targeted to three of the four Nestle Entities.

On March 8, 2021 Williams-Sonoma, with the Court's permission, submitted a supplemental request for additional documents from Nestlé S.A.  (ECF Nos. 147-49.)  The request seeks emails and documents in Nestlé S.A.'s possession that were sent to and from the domain name "competition@nespresso.com" concerning the compatibility of third-party capsules with the Nespresso Original Line machines.

For the reasons set forth below, many of Williams-Sonoma's proposed letters of request are impermissibly broad and/or not proportional to the needs of the case.  Accordingly, Williams-Sonoma's motion is GRANTED in part, subject to the modifications and guidance set forth below.

## **LEGAL STANDARD**

The issuance of letters rogatory under the Hague Convention, of which both the United States and Switzerland are signatories, is one method for seeking document discovery in a

3

foreign jurisdiction.[2] *Blagman v. Apple, Inc.*, No. 12-cv-5453 (ALC) (JCF), 2014 WL 1285496, at *3 (S.D.N.Y. Mar. 31, 2014) (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 530-531 (1987)); *see Villella*, 2018 WL 2958361, at *2; *Joseph v. Gnutti Carlo S.P.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016). The decision of whether to issue letters rogatory is within the discretion of the court. *Villella*, 2018 WL 2958361, at *2. Further, when determining whether to issue letters rogatory, courts apply the principles of Federal Rule of Civil Procedure 26. *Id.*, at *3 (citing *Joseph*, 2016 WL 4083433, at *1). Though the Federal Rules of Civil Procedure are controlling, courts should also be mindful of the possible burden placed on foreign authorities by the issuance of letters rogatory under the Hague Convention. *See Lantheus*, 841 F. Supp. 2d at 777-78; *Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06-cv-1446 (ADS) (ETB), 2007 WL 1875560, at *1 (E.D.N.Y. June 25, 2007) (citing *Aérospatiale*, 482 U.S. at 546).

      Under Rule 26, parties may seek discovery as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26 "is an extremely broad concept." *Joseph*, 2016 WL 4083433, at *1 (quoting *Chen–Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y.2013)). The party seeking discovery has the burden to demonstrate relevance, but it is not heavy. *Villella*, 2018 WL 2958361, at *3 (citing *Joseph*, 2016 WL 4083433, at *1). Nevertheless, "[d]iscovery may be curtailed where the information sought would be 'unreasonably cumulative or duplicative' or when 'the burden or expense of the proposed

---

[2] The Nestle Entities from which Williams-Sonoma seeks documents are based in Switzerland. (*See* ECF No. 130, Ex. 17.)

discovery outweighs its likely benefit.'" *Blagman*, 2014 WL 1285496, at *4 (quoting Fed. R. Civ. P. 26(b)(2)(C)). Courts "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Aérospatiale*, 482 U.S. at 546. Once the requesting party has met their burden, the opposing party must justify any restrictions on the discovery sought. *Joseph*, 2016 WL 4083433, at *1.

## **DISCUSSION**

In total, Williams-Sonoma has submitted 16 requests across four proposed letters rogatory. Nespresso opposes these requests for two distinct reasons. First, Nespresso asserts that the instant motion should be denied as untimely. Second, it argues that the proposed requests are irrelevant and/or disproportional to the needs of the case. The Court will address each of Nespresso's arguments in turn below.

### *I. Whether the Requests are Untimely*

Nespresso points out that Williams-Sonoma waited until a month and a half before the close of discovery before submitting its request despite numerous statements from the Court to initiate the Hague process as soon as possible. First, the Court notes that the fact discovery deadline in this case was recently extended through early May 2021. Second, Williams-Sonoma's delay is partially attributable the Court's own directives, which encouraged Williams-Sonoma to review Nespresso's initial productions of documents in order to ascertain whether letters rogatory issued pursuant to the Hague convention would even be necessary. (*See, e.g.*, Jan. 13, 2021 Conference Tr. 19-20.) Third, and relatedly, Nespresso was delayed in producing

5

documents to Williams-Sonoma, which thereby delayed Williams-Sonoma's determination as to whether it would file the instant motion.  (*See* ECF No. 97 showing Nespresso's plan to produce pre-2014 documents by early February 2021.)  While Nespresso initially produced certain agreements on January 27, 2021 to aid Williams-Sonoma in determining which foreign entities to pursue and what documents to seek, it was reasonable for Williams-Sonoma to assess later-produced documents to establish the scope of the instant motion and to allow for the requests to be as narrowly tailored as possible.  Further, the instant motion was filed approximately three weeks after the production of these agreements.  The Court will not deny the instant motion based on such a brief delay.

Nespresso cites the *Cordeiro v. Alves* case for the proposition that Williams-Sonoma's delay justifies denying the instant motion.  No. 16-cv-23233 (UU), 2017 WL 3099086 (S.D. Fla. Apr. 7, 2017).  However, this case out of the Southern District of Florida dismissed the proposed letters rogatory based, in large part, on its finding that the motion was filed less than a month before the discovery cut-off *and* because the movant delayed in filing its motion until "well over two months after being placed on notice" that a Hague request would be necessary.  *Id.* at *1.  As explained above, this is not the case here.  The Court directed Williams-Sonoma to evaluate the need for a Hague request based on Nespresso's production of documents, much of which was not produced until late January 2021, at the earliest.

While the Hague process is generally slow-moving and will undoubtedly prejudice Plaintiff to the extent that issuing these requests will delay the litigation, the Court believes that

these circumstances should not bar the instant motion, which purports to seek documents that are central to the claims and defenses asserted by the parties.

## II. *Whether the Requests are Relevant and Proportional*

Defendant's proposed requests can be divided into five categories: (1) agreements between the Nestle Entities and between the Nestle Entities and Starbucks or Buondi; (2) research and development documents; (3) consumer safety and warranty documents; (4) documents related to trademark and patent applications from the relevant entities; and (5) the supplemental request for documents sent to or from the competition@nespresso.com domain.

### A. *Agreements*

Williams-Sonoma requests that the Nestle Entities provide all predecessor and subsequent agreements to the Sublicense Agreement, General License Agreement, and Distribution Agreement, along with "any exhibits, addenda, modifications, and amendments thereto, or any agreements that reference the Agreements, [or] involved Nespresso or [a Nestle Entity] concerning the sale, distribution, or trade dress of the Original Line capsules in the U.S." Further, Williams-Sonoma requests all agreements to which any of the Nestle Entities is a party that at least partially concern the sale or distribution of the asserted trade dress in the United States.  Also, the requests seek agreements that concern Buondi-branded capsules, which are compatible with the Nespresso Original Line machines.

As articulated by Williams-Sonoma, the basis for these requests is that they relate to whether the rights to distribute and sell the Original Line capsule were properly assigned

and/or licensed to Nespresso by the Nestle Entities and that they could contain information concerning whether the Original Line capsule has acquired secondary meaning in the eyes of consumers. However, the Court finds that these requests are neither pertinent to Nespresso's standing in this action nor the issue of secondary meaning.

In order to make out a claim for trade dress infringement under 15 U.S.C. § 1125(a), Nespresso must show that (1) its mark is protectable, and that (2) there is a likelihood of consumer confusion as to the origin or sponsorship of the defendant's goods. *See Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Generally speaking, whether a mark is protectable is a function of its "distinctiveness" – i.e., whether the intrinsic nature of the mark identifies its particular source or whether it has acquired secondary meaning in the eyes of consumers. *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 381 (2d Cir. 2005).

Crucially, none of these enumerated considerations are implicated by, or closely relate to, the contractual arrangement underlying the distribution or sale of the Original Line capsule. Production of the agreements sought by Williams-Sonoma are unlikely to yield information relevant to the Original Line capsule's inherent distinctiveness, whether it has acquired secondary meaning, nor the likelihood that Williams-Sonoma's allegedly infringing product causes consumer confusion. Consumers are typically not privy to these agreements and, therefore, their relevance is limited. For example, while evidence showing that Buondi-branded capsules utilize the Original Line trade dress in the United States is certainly relevant to the claims and defenses in this action, the contractual agreements concerning the sale of those capsules are far less relevant, as they are unknown to the vast majority of consumers.

Furthermore, although it is possible that some of the requested agreements contain information marginally relevant to whether Nespresso has standing to bring its claims, such evidence does not justify the broad requests proffered by Williams-Sonoma.  Accordingly, the Court will not issue these requests because even if they seek marginally relevant information, they are not proportional to the needs of this case.

Finally, to the extent that Williams-Sonoma requests agreements from Nestlé S.A. that concern the Starbucks-branded single-serve capsules that are compatible with Nespresso's Original Line machines, that request is denied.  The Court previously ruled that the Starbucks agreement is irrelevant, or to the extent it is marginally relevant, that its production would be disproportionate to the needs of this case.  Further, the Court explained that this agreement is unlikely to contain any evidence that undermines the secondary meaning potentially acquired by the Original Line capsule shape.  For these same reasons, the Court will not issue this request to the Swiss Authorities.[3]

B. *Research and Development:*

Williams-Sonoma next requests research and development documents from NNSA, Nestlé S.A., and Nestec S.A.  Specifically, it requests research and developments documents concerning: (1) the compatibility of the Original Line capsule with Nespresso Original Line machines; (2) the reasons and/or benefits of using aluminum as the material for the Original

---

[3] Williams-Sonoma filed an objection to the Court's prior ruling concerning the Starbucks agreement at ECF Nos. 121-22.  Accordingly, if Judge Preska overrules the Court's Order, Williams-Sonoma will be permitted to renew its motion for the Court to issue this narrow request to Nestlé S.A. regarding the Starbucks agreements.

Line capsules and related design constraints; and (3) the compatibility of third-party capsules with the Nespresso Original Line machines.

Defendant asserts that these documents are material and discoverable because they directly relate to its functionality defense. Plaintiff appears to concede that these documents are relevant for the purposes of this motion. Nevertheless, Plaintiff opposes the research and development requests themselves because its counsel represents that it has already asked certain affiliates whether these documents exist and certifies that they do not.

With respect to relevance, the Court finds that these research and development documents are relevant to Williams-Sonoma's functionality defense. These documents could shed light on the rationale behind the material and shape used for the trade dress and could provide related information concerning how those decisions affect the manufacturing costs of the Original Line capsule. Such information is plainly relevant to functionality. *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012).

Further, it is unclear whether counsel for Nespresso specifically asked the Nestle Entities involved in the instant motion about these specific research and development documents. To the extent that they did, it will be relatively easy for these entities to respond to the proposed letters of request (presumably, by certifying that no such documents exist). To the extent that NNSA, Nestlé S.A., and Nestec S.A. have not been asked about these specific research and development documents, the Court finds that they are highly relevant, proportional to the needs of the case, and that the requests are narrowly tailored to such documents. Accordingly, the Court will permit the research and development related requests to issue.

C. *Patent Application Documents, Related Orders and Judgments, and the Trade Dress Registration Application*

Williams-Sonoma also requests non-privileged patent application documents from the relevant Nestle Entities. Specifically, it requests documents "used to support the allowance of the patent application[s] that resulted in the" '965 Patent and the '202 Patent, as well as those patents' respective file histories. Additionally, Williams-Sonoma requests documents used to oppose "any third-party utility patent applications for capsules compatible with Nespresso Original Line machines."

Williams-Sonoma's basis for these requests is, once again, that they pertain to functionality. To start, the Court agrees that product features claimed in expired utility patents are highly relevant to the issue of functionality and that the contents of a patent application can offer helpful evidence in assessing a federal trade dress claim. *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29 (2001) ("[a] prior patent . . . has vital significance in resolving the trade dress claim"). Thus, the requests seeking documents used to support these prior patent applications are relevant under Rule 26. However, Nespresso asserts that these requests are overly burdensome and disproportional to the needs of the case.

With respect to the '965 Patent, Nespresso points out that the relevant patent application is publicly available. Because Williams-Sonoma does not claim otherwise, the corresponding request for the '965 patent application and related documents is denied as unnecessary. There is no reason to burden the Nestle Entities with a request for documents that are publicly available.

11

In contrast, the '202 Patent and related application documents may not be publicly available since it is far older.  And as noted above, the '202 Patent and the related application documents are relevant to the instant action. To the extent Williams-Sonoma seeks documents beyond these, its request is denied.  Accordingly, the Court will permit Williams-Sonoma to revise its request to seek only the '202 Patent, the '202 Patent application, and supporting documents filed in conjunction with that application from the relevant Nestle Entities.

Third, with respect to Williams-Sonoma's request for documents used to oppose "any third-party utility patent applications for capsules compatible with Nespresso Original Line machines," the Court finds this request improper.  To be sure, a plaintiff's enforcement efforts to protect its rights to the exclusive use of its asserted trade dress can be relevant in evaluating a trade dress infringement claim.  That said, Williams-Sonoma's request broadly seeks information about the enforcement efforts of foreign affiliates without specifying any specific third-party patent applications it has a basis to believe exist.  Thus, the request is overbroad. Moreover, the Court finds that this information about enforcement efforts could be secured far more efficiently through depositions.  In the event that witnesses identify specific third-party patent applications that warrant investigation, the Court may permit Williams-Sonoma to renew this request in a fashion narrowly tailored to the patents disclosed by the deponents.

Williams-Sonoma also requests "[o]rders, decisions, or judgments in any jurisdiction that purport to determine the validity of any intellectual property claim in the design or shape" of the Original Line capsule.  Defendant asserts that this request is proper because "if the design has been determined to be functional in one jurisdiction, it is functional in the U.S.,

12

regardless of any differences in legal frameworks." However, Williams-Sonoma fails to cite any legal authority for this sweeping proposition. Indeed, the case law holds otherwise. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70 (2d Cir. 2008) ("[a] trademark has a separate legal existence under each country's laws, and trademark rights exist in each country solely according to the that nation's laws") (citing *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007)). Accordingly, to the extent that this request seeks judgments from foreign tribunals, the request is mostly irrelevant and is not proportional to the needs of this case. Further, any such orders, decisions, or judgments rendered by U.S. courts, while relevant, are publicly available. Accordingly, there is no basis to permit this request.

Finally, Williams-Sonoma requests any documents concerning the trade dress application filed by SPN. The Court understands that the trade dress application itself, much like the '965 Patent, is publicly available. Moreover, this request asks a non-party foreign entity for "any documents concerning the application." Such a request is impermissibly broad, and Williams-Sonoma has failed to satisfy its burden to show otherwise. Accordingly, this request is wholly unnecessary and will not be permitted to issue.

D. *Consumer Documents*

Next, Williams-Sonoma seeks documents sufficient to show whether use of third-party capsules will affect the warranty for the Original Line machines as well as documents reflecting consumer communications from the United States regarding third-party capsules and the Original Line machines.

At the March 4, 2021 case management conference, the Court addressed a similar request pertaining to documents concerning the Nespresso warranty. After hearing argument on Williams-Sonoma's request to compel the production of documents showing why Nespresso included warranty language with its Original Line machines that specify the use of Nespresso-branded capsules in those machines, the Court declined to compel production of such documents since they were "not proportional to the needs of the case at this stage of the proceedings." (Order at ECF No. 141.) Even assuming that these document are somehow related to the functionality or secondary meaning of the trade dress – a notion that the Court doubts based on the evidence presented at the March 4 conference – the Court determined that information related to the warranty and safety language associated with the Original Line machines would be more efficiently obtained through specific questions about product testing during a 30(b)(6) deposition. The Court also recognized that, based on those depositions, Williams-Sonoma would then be able to follow up with more tailored requests. A similar analysis applies here. If additional fact discovery alerts Williams-Sonoma to specific documents that are fundamental to the claims and/or defenses asserted in this action, Williams-Sonoma will be permitted to request those documents at that time, through the Hague process or otherwise. For now, however, this request is denied without prejudice.

Defendant also requests communications from United States consumers concerning "third-party capsules and Nespresso Original Line machines, including, but not limited to, questions, complaints, warranty inquiries, and repair requests." These documents, contrary to the warranty documents discussed above, directly pertain to how consumers perceive

Plaintiff's asserted trade dress in comparison to third-party alternatives.  Such evidence, of course, is probative as to multiple fundamental issues underpinning this case such as distinctiveness (and relatedly, secondary meaning), the strength of the asserted trade dress, and – to the extent that consumers inquired about using Williams-Sonoma's product with the Original Line machines – actual consumer confusion.  Therefore, this request is highly relevant.  Further, the Court finds the request reasonably tailored, given the unique circumstances of the case.  Accordingly, the Court will issue this request to the relevant Nestle Entities.

E. *Supplemental Request*

Williams-Sonoma's final request pertains to the "competition@nespresso.com" email domain, which Nespresso's counsel has certified is in the custody of Nestlé S.A.  Specifically, Williams-Sonoma requests any communications sent to and from that address concerning the compatibility of third-party capsules with the Nespresso Original Line machines.  It argues that such communications are relevant to the strength and exclusivity of the asserted trade dress, secondary meaning, and the parameters of the trade dress at issue.  For its part, Nespresso opposes the request and argues that the communications sought are neither relevant to these issues nor proportional to the needs of the case.

Based on the evidence submitted by Williams-Sonoma in conjunction with this request, it appears that the competition@nespresso.com domain surveys the market and circulates press releases concerning competitor products from all over the world to Nespresso employees and/or officers.  (*See* ECF No. 149, Ex. 2.)  Further, those email distributions sometimes include key takeaways and summaries of the third-party press releases that are distributed.  (*Id.*)  In

15

short, the sampling of emails from this domain demonstrate that its key function is to provide Nespresso employees with "live updates" concerning competitor coffee machines, compatible capsules, and other related products. That said, the distribution emails merely reproduce publicly available articles or press releases from competitors and offer little to no analysis as to the implications or importance of those articles.

The Court is not convinced that these sorts of communications are relevant to the issue of functionality, secondary meaning, or consumer confusion. As Nespresso points out, the factors relevant to the issue of secondary meaning and consumer confusion mostly pertain to consumer-facing market conditions; that is, evidence demonstrating how ordinarily prudent consumers view a product in the relevant marketplace. Emails aggregating competitor press releases are hardly relevant to a consumer's perspective of the market.

Nor is the Court convinced that these documents bear on functionality. Unlike the research and development documents discussed above, the communications at issue here do not relate to how the asserted trade dress affects the cost or quality of Nespresso's product. Indeed, Williams-Sonoma's supplemental letter motion fails to submit otherwise.

In sum, these communications are unlikely to have relevant information that has not already been produced by Nespresso in discovery, and, to the extent additional information exists, that information appears to be publicly available. Accordingly, the Court will not issue Williams-Sonoma's supplemental request.

## CONCLUSION

For the reasons set forth above, Defendant's request for the issuance of letters of request (ECF No. 127) is GRANTED, but only to the extent consistent with the above analysis. By **March 19, 2021** Defendant must file revised letters of request consistent with the Court's guidance in this Opinion and Order.

**SO ORDERED.**

Dated: March 12, 2021
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge